In re the MARRIAGE OF M. Paula
A. ELMER, n/k/a M. Paula
Ashen, Appellee,

and

Thomas A. Elmer, Appellant.

Nos. 95CA2001, 96CA0269.

Colorado Court of Appeals,
Div. III.

March 6, 1997.

Cox Mustain–Wood Walker Schumacher, Mary Jane Truesdell Cox, Littleton, for Appellee.

Thomas A. Elmer, pro se.

Opinion by Judge JONES.

Thomas A. Elmer (husband) appeals from an order concerning child support, parenting time, and related matters, which was entered as a result of post-dissolution proceedings with his ex-wife, M. Paula A. Elmer, now

known as M. Paula Ashen (wife). We affirm in part, reverse in part, and remand with directions.

A decree of dissolution was entered in 1992. The separation agreement provided that the wife would have sole custody of the parties' daughter, that the husband would have reasonable and liberal visitation rights, and that the husband would pay child support in the approximate amount of $65 per month.

In 1994, the husband filed motions for joint custody and to enforce visitation under § 14–10–129.5, C.R.S. (1987 Repl.Vol. 6B). In February 1995, the husband also filed a C.R.C.P. 97 motion for recusal of the trial judge. Thereafter, the wife filed motions for a custody evaluation and for an increase in child support.

The husband withdrew his motion to modify custody, and the motion for disqualification was denied during interim proceedings. After an evidentiary hearing, the trial court entered an order in October 1995, which, as pertinent here, granted the husband three visits per year with the child in Minnesota and nine additional monthly visits in Colorado, a "monthly visit" being defined as up to three successive ten-hour days. The court also ordered that all visitation exchanges be supervised and that no overnight visits be allowed until the summer of 1996, and then only with the consent of the child's psychiatrist.

The court imputed income to the husband of $1733 per month and found that the wife earned $5500 per month. It also ordered the wife's counsel to submit a child support worksheet utilizing those figures.

The court further ordered the husband to pay all of the child's transportation expenses for the Minnesota visits, the wife's expenses to accompany the child to Minnesota, and any related per diem costs for one of those visits. It ordered the wife to pay her own expenses for the other two Minnesota visits and one-third of the husband's expenses to travel to Colorado.

In a January 1996 order, the court ordered the husband to pay $444.32 per month child support through the registry of the court.

## I.

The husband first asserts that the trial court erred in failing to grant his C.R.C.P. 97 motion. We address this issue because, contrary to the wife's contention, the notice of appeal was timely filed from the final order in this case. However, we perceive no error.

■ Whether to grant a motion for disqualification in a civil case is a matter within the discretion of the trial court, and its ruling will not be disturbed on appeal except for an abuse of discretion. *In re Marriage of Mann*, 655 P.2d 814 (Colo.1982).

■ The determination of the legal sufficiency of a motion and affidavit seeking disqualification, however, is subject to an independent review by an appellate court. *Smith v. District Court*, 629 P.2d 1055 (Colo.1981). Consequently, we consider the sufficiency of the husband's allegations. *Moody v. Corsentino*, 843 P.2d 1355 (Colo.1993).

■ The test of whether a motion is legally sufficient to require a judge's disqualification is whether it and supporting affidavits state facts from which it reasonably may be inferred that the judge has bias or prejudice that will prevent him or her from dealing fairly with the party seeking recusal. *Wright v. District Court*, 731 P.2d 661 (Colo. 1987). Unless a reasonable person could infer that the judge would in all probability be prejudiced against the petitioner, the judge's duty is to sit on the case. *Moody v. Corsentino, supra; Smith v. District Court, supra.*

■ Conclusionary statements that a judge is biased do not establish a reasonable basis for concluding that disqualification is required. *See S.S. v. Wakefield*, 764 P.2d 70 (Colo.1988).

■ Here, the motion and supporting affidavits for disqualification contain only opinions and hearsay statements that the court intended to enter an order for supervised visitation that was not supported by the law. However, the affidavits of the attorneys who allegedly made those statements were not attached to the motion nor filed separately, as asserted by the husband. Further-

more, the trial court has the authority to order supervised visitation. Thus, the husband failed to establish any bias or prejudice by the trial court.

◼ Finally, a review of the proceedings in February 1995 shows that the husband was awarded interim specific parenting time for two days in each month for the balance of 1995. The husband's counsel advised the court that the husband did not believe he could financially afford to exercise parenting time on a monthly basis and the trial court indicated that the husband would not be penalized for such inability. Thus, we fail to see how the husband was adversely affected by the court's rulings.

## II.

The husband also contends that the trial court abused its discretion by restricting the parenting time rights that were granted to him. We disagree.

◼ The determination of parenting time is a matter within the sound discretion of trial court, taking into consideration the child's best interests and the policy of encouraging the parent-child relationship. *In re Marriage of Finer,* 920 P.2d 325 (Colo. App.1996). Parenting time is primarily a right of the child and only secondarily a right of the parent. *See Bernick v. Bernick,* 31 Colo.App. 485, 505 P.2d 14 (1972) (under former designation of parenting time as visitation).

◼ Here, the trial court found that no specific schedule had been agreed to by the parties in their separation agreement and that the husband had only seen the child for a few hours on five different days between 1992 and the time he filed his motion in mid–1994. The court also found that the husband loves his daughter and that he is an asset to her life, but that he has continuing anger toward the wife and the judicial system and that supervised exchanges were necessary to minimize any altercations between the parties, which would be witnessed by the child.

In addition, the court found that the child had spent relatively little time away from her mother; that the father had not been consistently in the child's life from February 1992 until February 1995, when he was accorded certain parenting time; and that the experts recommended that parenting time with the father be introduced and integrated slowly to prevent long-lasting psychological damage to the child's emotional development.

◼ Therefore, the court concluded that it was in the child's best interests that the parenting time exchanges be supervised and that overnight parenting time be delayed. Further, the record shows that the father did not request parenting time on a monthly basis, but proposed sharing only the summer and major holidays. Thus, we conclude that the father's parenting time was not restricted and that the findings of the court support the temporary conditions that were imposed for exchange of the child.

## III.

◼ The husband also contends that the trial court erred in delegating to the child's psychiatrist the authority to determine when and if overnight visitations may occur. We agree.

◼ The trial court can enter orders relating to parenting time, and the best interests of the child is the controlling factor. *See In re Marriage of Zebedee,* 778 P.2d 694 (Colo.App.1988). However, a parent not granted custody of the child is entitled to reasonable parenting time rights unless *the court finds,* after a hearing, that parenting time would endanger the child's physical health or significantly impair the child's emotional development. Sections 14–10–129(1) and 14–10–129(2), C.R.S. (1996 Cum.Supp.).

A division of this court determined in *Zebedee* that the trial court did not abuse its discretion in requiring that the husband there undergo psychological counseling as a condition precedent to visiting the minor child when it had made a specific finding that the husband's behavior and actions toward the minor child significantly impaired the child's emotional behavior.

Here, the testimony of the child's psychiatrist supported the temporary postponement of overnight visits until the summer of 1996.

However, we know of no authority that would authorize the trial court to defer indefinitely the decision for exercise of overnight visitation and to delegate that decision to the child's psychiatrist.

The record here shows that the husband agreed to the involvement of the guardian ad litem, but he did not agree to deferral of any decision-making authority to the psychiatrist. And, in our view, the trial court's finding that pushing the child into overnight visitation too soon would result in long-lasting psychological damage to the child does not support the order granting the psychiatrist the authority to determine when, and if, overnight visitation is in the best interests of the child.

Accordingly, we conclude that the trial court had no authority to delegate to the child's psychiatrist the decision when overnight visitation could begin to occur. *See In re Marriage of Finer, supra* (inability of the parties to communicate not sufficient ground to continue appointment of GAL for mediation purposes); *cf. In re Marriage of Gehret,* 41 Colo.App. 162, 580 P.2d 1275 (1978) (trial court may not delegate its discretion to divide marital property). Therefore, that portion of the order requiring the consent of the psychiatrist for overnight visits starting the summer of 1996 cannot stand and the matter must be remanded for review of that issue based upon the current circumstances of the child. Until such time as this issue is reviewed on remand, the trial court's order delaying overnight visitation shall remain in effect.

## IV.

The husband also contends that the trial court made several errors in the determination of child support.

## A.

First, the husband asserts that the evidence does not support the trial court's determination that a change of circumstances occurred that warranted modification of child support or its findings concerning the gross incomes of the parties. We disagree.

■ The provisions of any decree respecting child support may be modified upon a showing of changed circumstances that are substantial and continuing. Section 14–10–122, C.R.S. (1996 Cum.Supp.). In determining whether there has been a substantial and continuing change of circumstances, the trial court must apply the child support guideline and give due consideration to all of the statutory factors. *In re Marriage of Greenblatt,* 789 P.2d 489 (Colo.App.1990). Courts may deviate from the guideline when its application would be inequitable, unjust, or inappropriate so long as specific findings are made specifying the reasons for deviation. Section 14–10–115(3)(a), C.R.S. (1996 Cum.Supp.).

Income for purposes of the guideline means actual gross income, if the parent is employed to full capacity, or potential income, if voluntarily unemployed or underemployed. Section 14–10–115(7)(a), C.R.S. (1996 Cum.Supp.). A parent shall not be deemed "underemployed" if certain enumerated conditions apply. Section 14–10–115(7)(b)(III), C.R.S. (1996 Cum.Supp.).

Further, the determination of the credibility of witnesses and the weight, probative force and sufficiency of the evidence and the inferences and conclusions to be drawn therefrom are matters within the sole discretion of the trial court. *In re Marriage of Foottit,* 903 P.2d 1209 (Colo.App.1995); *In re Marriage of Plesich,* 881 P.2d 379 (Colo.App. 1994).

■ Here, the trial court accepted the wife's testimony that her income had gone down since the entry of the decree of dissolution. It also found that the husband is an attorney licensed to practice in Colorado, that he had not practiced since 1987, two years prior to his marriage, and that he voluntarily placed his license on an inactive status. The record shows that the husband was unemployed at the time the decree of dissolution was entered and that the child support obligation at that time was based upon the husband's earnings of $350 per month.

The court further found, with record support, that the husband works seasonally for an apple orchard, where he earns $10 per hour, does odd jobs to supplement his income, can work 40 hours per week, and has

the skills to earn similar wages at another place of employment as a mechanic. Thus, the court found, in essence, that the husband was underemployed and reasonably inferred the husband's potential income and abilities from a synthesis of the evidence. Accordingly, we find no error.

### B.

▆ The husband also argues that the trial court erred in including costs for ongoing therapy for the child in the computation of support. We disagree.

At the discretion of the court, professional counseling or psychiatric therapy for diagnosed mental disorders may be considered as an extraordinary medical expense, which shall be added to the basic child support obligation and divided between the parents in proportion to their adjusted gross income. Sections 14–10–115(13)(h)(I) and 14–10–115(13)(h)(II), C.R.S. (1996 Cum.Supp.); *see In re Marriage of Stone*, 749 P.2d 467 (Colo. App.1987).

Here, the husband concedes that the record contains a diagnosis from the child's psychiatrist. The trial court specifically found that the mental health counseling of the child had been necessitated by the husband's voluntary absence from the child's life and that ongoing counseling was necessary.

Further, the child's psychiatrist made recommendations concerning parenting time that were adopted by the court to prevent long-lasting damage to the child's emotional and psychological development. Thus, it was within the trial court's discretion to consider ongoing treatment by the psychiatrist as an extraordinary expense to be added to the basic child support obligation.

### C.

▆ The husband also asserts that the trial court erred in including costs for private school in the computation of support. We disagree.

▆ For the purposes of calculating child support, any reasonable and necessary expenses for attending any special or private elementary or secondary school to meet the "particular educational needs" of the child are to be divided between the parents in proportion to their adjusted gross income. Section 14–10–115(13)(a)(I), C.R.S. (1987 Repl.Vol. 6B). The means of meeting the "particular educational needs" of a child are not limited to providing private schooling only when a child has a learning disability or otherwise qualifies for a program of special education. Rather, the standard of living that the child would have enjoyed if the marriage had not been dissolved must be considered. *In Marriage of Payan*, 890 P.2d 264 (Colo.App.1995).

▆ Further, § 14–10–115(13)(a)(I) does not require that the expenses to meet the child's particular educational needs be absolutely necessary, but only that they be reasonably necessary. *In re Marriage of Eaton*, 894 P.2d 56 (Colo.App.1995).

Here, the trial court found that the wife's decision to enroll the child in a private school, although made unilaterally, was in the best interests of the child. The wife testified that tuition for the school she chose was substantially less than for the comparable alternatives available. Accordingly, it is implicit in the court's order that the expenses incurred by the wife were reasonable. *See In re Marriage of Udis*, 780 P.2d 499 (Colo. 1989) (appellate court may presume that trial court considered evidence presented). Therefore, it was within the trial court's discretion to determine that the child's continued attendance at private school met the particular educational needs of the child.

### D.

▆ Next, the husband argues that the trial court erred in obligating him to pay all of the child's transportation costs. He also argues that the court had no authority to order him to bear a substantial portion of the wife's transportation costs when she travels with the child to the husband's residence in Minnesota. We agree.

Section 14–10–115(13)(a)(II), C.R.S. (1996 Cum.Supp.) provides that reasonable and necessary transportation expenses for the *child* are to be divided between the parents in proportion to their adjusted gross in-

comes. *See In re Marriage of Andersen,* 895 P.2d 1161 (Colo.App.1995); *In re Marriage of Hoffman,* 878 P.2d 103 (Colo.App.1994).

The child support guideline does not provide for allocation between the parties of a *parent's* travel expenses. However, in some circumstances, it might be appropriate for the trial court to deviate from the presumptive amount of support to account for a parent's extraordinary travel expenses, if the trial court makes the necessary specific factual findings. *In re Marriage of Hoffman, supra; see also In re Marriage of Kluver,* 771 P.2d 34 (Colo.App.1989).

Here, the portion of the order that the husband pay for all of the child's transportation expenses for each of the Minnesota visits improperly allocates all of the child's transportation expenses to the husband instead of proportionately allocating them between the parties, with no finding as to why such is an appropriate allocation. Further, there is no authority for the court to order the husband to pay any of the wife's travel or per diem expenses, and neither the evidence nor the findings support the theory that the court intended to deviate from the guideline when it ordered each party to pay a portion of the other's own transportation or per diem costs.

Those portions of the order that require either party to pay any of the other's transportation or per diem costs, that obligate the husband to pay all of the child's transportation costs to Minnesota, and that require the consent of the psychiatrist for overnight parenting time are reversed, and the cause is remanded for reallocation of the child's transportation costs between the parties in proportion to their respective incomes and for review regarding whether any further restriction of parenting time is appropriate under § 14–10–129. In all other respects, the order is affirmed.

PLANK and RULAND, JJ., concur.