The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
March 8, 2018

**2018COA34**

**No. 17CA0262, *In re Marriage of Boettcher* — Family Law — Post-dissolution — Modification of Child Support — Schedule of Basic Child Support Obligations — Discretion**

In this appeal of a post-dissolution of marriage order modifying the amount of the father's child support obligation, a division of the court of appeals addresses the requirements for modifying such support when the parents' combined incomes exceed $30,000 per month, the highest level of the support schedule in section 14-10-115(7)(b), C.R.S. 2017. The division rejects the father's argument that the support obligation at the highest level is the presumptive amount under the guidelines, such that any greater award constitutes a deviation requiring findings in accordance with section 14-10-115(8)(e). Rather, consistent with the plain language of section 14-10-115(7)(a)(II)(E), the district court may use discretion to determine support in such high income

cases, but the presumptive amount shall not be less than it would be based on the highest level of the schedule.

In this case, the district court applied the correct legal standard in finding that there was no presumptive child support amount under the parties' circumstances, acknowledging the minimum presumptive amount under the guidelines, and then using its discretion to determine a higher amount based on the factors in section 14-10-115(2)(b).

The division affirms the order of the district court.

Court of Appeals No. 17CA0262
Weld County District Court No. 10DR822
Honorable W. Troy Hause, Judge

In re the Marriage of

Ryan E. Boettcher,

Appellant,

and

Christina L. Boettcher,

Appellee.

ORDER AFFIRMED

Division IV
Opinion by JUDGE VOGT*
Loeb, C.J., and Casebolt*, J., concur

Announced March 8, 2018

Eckelberry Law Firm, LLC, John L. Eckelberry, Denver, Colorado, for Appellant

Peek Goldstone, LLC, Amanda M. Peek, Greeley, Colorado, for Appellee

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2017.

¶ 1    In this post-dissolution of marriage dispute concerning child support for the child of Ryan E. Boettcher (father) and Christina L. Boettcher (mother), father appeals the order modifying his support obligation and requiring him to pay a portion of mother's attorney fees under section 14-10-119, C.R.S. 2017.  We affirm.

## I.  Background

¶ 2    The parties' ten-year marriage ended in 2011.  Their agreement that no child support would be owed by either of them was incorporated into the decree.

¶ 3    In 2015, mother moved to modify child support, alleging changed income resulting in more than a ten percent change in the amount of support that would be due.  The district court ordered the parties to exchange financial information and mediate, but the support issue was not resolved.

¶ 4    After a hearing, the district court ordered father to pay mother $3000 in monthly child support as of the date she moved to modify, which, after crediting father with payments he voluntarily made, resulted in arrearages of $34,822, to be paid off over twenty-four months.  Based on the disparity in the parties' financial resources

and income, the court further ordered father to pay seventy percent of mother's attorney fees incurred for the proceedings.

## II.  Child Support

¶ 5      Father contends that the court erred by (1) determining that there was no rebuttable presumptive child support obligation when the parents' combined incomes exceed the highest level of the statutory income schedule; (2) not making sufficient findings and including inappropriate expenses in awarding mother $3000 per month in child support; and (3) awarding retroactive child support back to the date of mother's motion without making sufficient findings to support the award.  We disagree.

### A.  Standard of Review

¶ 6      "We review child support orders for abuse of discretion because the issue of the parents' financial resources is factual in nature."  *In re Marriage of Davis*, 252 P.3d 530, 533 (Colo. App. 2011).  A court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair.  *In re Marriage of Atencio*, 47 P.3d 718, 720 (Colo. App. 2002).

¶ 7      We review de novo whether the district court applied the correct legal standard.  *Id.*  "Interpretation of the child support

2

statutes is a question of law that we review de novo." *In re Marriage of Paige*, 2012 COA 83, ¶ 9.

B. Determining Child Support When the Parents' Combined Incomes Exceed the Highest Level of the Statutory Schedule

¶ 8    Child support is determined by applying the schedule in section 14-10-115(7)(b), C.R.S. 2017, to the parents' combined gross incomes.  *See* § 14-10-115(7)(a)(I); *Davis*, 252 P.3d at 534. The resulting basic child support obligation is then divided between the parents in proportion to their adjusted gross incomes.  § 14-10-115(7)(a)(I).

¶ 9    The schedule establishes child support amounts for parents with combined monthly incomes from $1100 to $30,000.  *See* § 14-10-115(7)(b).  There is a rebuttable presumption in such cases that child support should be ordered in the amount indicated by the schedule.  *See* § 14-10-115(8)(e); *In re Marriage of Wells*, 252 P.3d 1212, 1214 (Colo. App. 2011).  The court may deviate from the schedule if it determines that the amount indicated would be inequitable, unjust, or inappropriate, but it must make findings specifying the presumptive amount and its reasons for the deviation.  § 14-10-115(8)(e); *Wells*, 252 P.3d at 1214.

¶ 10    For parents with combined incomes above the highest level of the schedule, or greater than $30,000 per month, "[t]he judge may use discretion to determine child support . . . except that the presumptive basic child support obligation shall not be less than it would be based on the highest level." § 14-10-115(7)(a)(II)(E); *see In re Marriage of Balanson*, 25 P.3d 28, 43-44 (Colo. 2001); *see also In re Marriage of Van Inwegen*, 757 P.2d 1118, 1120 (Colo. App. 1988) (noting that the legislative history of the statute indicates that "the guideline provides calculated amounts of child support up to a specific combined gross income level, but in cases with a higher combined gross income, child support is to be determined on a case-by-case basis").

¶ 11    In exercising its discretion, the district court considers all relevant factors, including: (1) the child's and the custodial parent's financial resources; (2) the standard of living the child would have enjoyed had the marriage not been dissolved; (3) the child's physical and emotional condition and educational needs; and (4) the financial resources and needs of the noncustodial parent. § 14-10-115(2)(b); *see In re Marriage of Schwaab*, 794 P.2d 1112, 1113 (Colo. App. 1990); *Van Inwegen*, 757 P.2d at 1120-21; 19 Frank L.

4

McGuane & Kathleen A. Hogan, Colorado Practice Series: Family Law & Practice § 26:17, Westlaw (2d ed. database updated May 2017).

¶ 12    Father argues that, under section 14-10-115(7)(a)(II)(E), for combined incomes above the highest level of the schedule, the child support obligation at the highest level is the presumptive amount under the guidelines, such that any greater award constitutes a deviation under section 14-10-115(8)(e).  We are not persuaded.

¶ 13    First, the statute does not by its plain language state that the support amount at the highest level of the schedule is the presumptive amount whenever the parents' combined incomes exceed the highest level of the schedule.  *Cf. Paige*, ¶ 9 (if statutory language is clear and unambiguous on its face, we apply it as written).  Instead, the statute provides that the court "may use discretion" to determine support in that circumstance, but that the presumptive obligation "shall not be *less than* it would be based on the highest level" of the schedule.  § 14-10-115(7)(a)(II)(E) (emphasis added).  Consistent with this language, cases from this court describe the support amount at the highest level of the schedule in this circumstance as the "minimum" presumptive amount of

5

support, as opposed to the presumptive amount of support. *See, e.g., In re Marriage of Ludwig*, 122 P.3d 1056, 1060 (Colo. App. 2005); *In re Marriage of Antuna*, 8 P.3d 589, 597 (Colo. App. 2000); *Van Inwegen*, 757 P.2d at 1120.

¶ 14 Thus, under the statute, a court may not award *less than* the support amount at the highest level of the schedule without deviating under section 14-10-115(8)(e). However, deviation does not apply when the court awards *more than* the amount of support from the highest income level of the schedule. Rather, in that circumstance, the court exercises its discretion to determine an appropriate amount of support based on relevant factors, including those listed at section 14-10-115(2)(b)(I)-(V). *See Schwaab*, 794 P.2d at 1113; *Van Inwegen*, 757 P.2d at 1120-21; *cf. In re Marriage of Nimmo*, 891 P.2d 1002, 1007 (Colo. 1995) (noting that the child support guidelines "were not enacted to prevent an increase in a child's standard of living by denying a child the fruits of one parent's good fortune after a divorce"); *In re Marriage of Bohn*, 8 P.3d 539, 541-42 (Colo. App. 2000) (upholding child support obligation set at twice the amount of the child's needs when parent had won lottery and noting that "[n]othing in the child support

statute precludes the trial court from ordering a support payment that exceeds the known needs of the child"). As a division of this court described the standard in *Schwaab*, "it is to be presumed, subject to rebuttal, that the minimum amount of support is that set forth in the highest level of the guidelines;" however, "[t]he actual level of support required . . . will depend upon the court's exercise of its discretion" in applying the section 14-10-115(2)(b) factors. 794 P.2d at 1113.

¶ 15     Based on these authorities and the plain language of section 14-10-115(7)(a)(II)(E), because the district court did not award *less than* the highest amount indicated by the statutory schedule, it did not err in failing to treat the highest amount as presumptive. To the extent other divisions of this court have held otherwise and required deviation findings in this context, we decline to follow those cases. *See, e.g.*, *In re Marriage of Upson*, 991 P.2d 341, 344-45 (Colo. App. 1999); *see also People v. Abu-Nantambu-El*, 2017 COA 154, ¶ 88 ("[O]ne division of the court of appeals is not bound by a decision of another division.").

¶ 16     Had the legislature intended the amount of child support at the highest level of the income schedule to be the presumptive

7

amount of support in all cases where the parents' combined incomes exceed the highest level of the schedule, it could have clearly so provided, as, for example, Arizona's child support guidelines do. *See* Ariz. Rev. Stat. Ann. § 25-320 app. ¶ 8 (Child Support Guidelines 2017) ("If the combined adjusted gross income of the parties is greater than $20,000 per month, the amount set forth for combined adjusted gross income of $20,000 shall be the presumptive Basic Child Support Obligation."). Our legislature did not use such language, but instead stated that the presumptive obligation in such cases "shall not be less than" the highest amount. § 14-10-115(7)(a)(II)(E). We apply the statute as its plain language dictates. *See Paige*, ¶ 9.

¶ 17 Additionally, father's argument that the basic child support obligation in this case — where father alone earns $92,356 per month and the parties together earn $105,699 per month — should be presumed at the level of parents who earn a combined $30,000 per month conflicts with the "Income Shares Model" on which Colorado's child support guidelines are based. *See Nimmo*, 891 P.2d at 1006. That model assumes that a certain percentage of the parents' combined income in an intact household will be spent on

8

their children and calculates child support obligations accordingly. *Id.* at 1006-07. The model was formulated to address concerns that child support levels were being set too low and that children were suffering a decrease in their standard of living after their parents divorced. *Id.* As the supreme court in *Nimmo* recognized, children are not locked into their parents' marital standard of living until emancipation, but rather are entitled to share in a parent's good fortune, such as father's significant increase in income here, after a divorce. *See id.* at 1007; *see also Bohn*, 8 P.3d at 542.

¶ 18 It would accordingly not be appropriate under the Income Shares Model to treat the parents here the same as parents earning less than one-third of their income, or to impose the same presumptive child support obligation on both sets of parents.

¶ 19 In sum, we conclude that the district court applied the correct legal standard in (1) finding that there was no presumptive child support amount under the parties' circumstances; (2) recognizing the *minimum* presumptive amount under the guidelines; and (3) then using its discretion to determine a higher amount based on the section 14-10-115(2)(b) factors.

## C. Sufficiency of the District Court's Findings

¶ 20 We further conclude that, in determining child support, the district court made sufficient findings concerning the relevant statutory factors and did not include inappropriate expenses in its award. Additionally, the amount of support it awarded — $3000 per month — is not manifestly arbitrary, unreasonable, or unfair under the parties' circumstances and thus does not constitute an abuse of discretion. *See Atencio*, 47 P.3d at 720.

¶ 21 The district court acknowledged father's argument that his monthly child support obligation under the highest income level of the schedule would be $1424.82, as well as mother's argument that it should extrapolate upward from the highest level, which would result in a monthly child support payment of $5024.52 for father. In rejecting both parties' arguments and setting father's obligation at $3000 per month, the court noted that it was required to consider the relevant factors at section 14-10-115(2)(b) and that it had done so. As noted *supra* Part II.B, the court was not required to make deviation findings under section 14-10-115(8)(e) because there was no presumptive support amount here.

¶ 22    The court found that the child had no financial resources of
his own and that the marital standard of living, while relevant, was
not dispositive.  Rather, the child was entitled to benefit from the
fact that father had done very well financially since the dissolution.
*See* § 14-10-115(2)(b)(II), (III), (V) (court considers both parents'
financial resources and standard of living child would have enjoyed
had marriage not ended).  The court noted the disparity in the
parties' abilities to provide for shared activities and experiences
with the child, and it credited mother's concern that this disparity
would have an impact on her relationship with the child as he grew
older.  It further found mother credible in her testimony that she
would spend child support payments to raise the child's standard of
living, and it found that it was reasonable for her to want to save for
his future college expenses even though doing so was not legally
required.  *See* § 14-10-115(2)(b)(IV) (court is to consider child's
educational needs).

¶ 23    The court's findings are supported by the record.  Mother
testified to the differences in the level of experiences the parties
were able to provide for the child and that child support would
enable her to purchase better clothes for him, travel more, eat at

nicer restaurants, and participate in boating, which was an activity the child enjoyed with father. She further testified that she wanted to continue to save for the child's college expenses and was afraid she would not be able to do so as the parties' distributions from their partnership, PFC Funding, declined — which both testified would happen.

¶ 24 Father did not dispute the level of experiences and activities he was able to provide, including numerous trips with the child; however, he argues on appeal that the court did not consider additional financial circumstances, such as his tax liability and a significant debt obligation, that affected his ability to pay support. Nor, he argues, did the court acknowledge mother's monthly surplus as a financial resource.

¶ 25 Although the court's order does not reference these circumstances, we presume that the court considered the testimony on the subject. *See In re Marriage of Hatton,* 160 P.3d 326, 329 (Colo. App. 2007). Additionally, even assuming the amount of debt and taxes father claimed, his remaining monthly income is still sufficient to provide support at the $3000 per month amount ordered by the court.

¶ 26    Nor do we agree with father that the court included inappropriate expenses, such as mother's travel and activity expenses, in imposing a $3000 per month support obligation.  As noted, the court considered mother's testimony concerning the parties' differing abilities to engage in discretionary spending on vacations and special activities with the child.  The child was ten years old at the time of the hearing and thus could not reasonably participate in such activities without a parent also participating.

¶ 27    Father's reliance on section 14-10-115(11)(a)(II), which allows a court to apportion only a child's transportation expenses between the parties, *see In re Marriage of Elmer*, 936 P.2d 617, 622-23 (Colo. App. 1997), is misplaced.  That statute by its plain terms applies only to transportation expenses for travel between the parents' homes for parenting time.  *See* § 14-10-115(11)(a)(II); *Elmer*, 936 P.2d at 622-23.  It does not apply when the court is exercising its discretion to determine child support for high income parents under sections 14-10-115(2)(b) and 14-10-115(7)(a)(II)(E).  Further, even if it did apply in that context, it allows the court to include an accompanying parent's travel expenses for a child under the age of twelve.

¶ 28    The court also did not abuse its discretion by considering mother's desire to save for the child's college expenses, even though, as it noted, neither she nor father was obligated to pay such expenses as a part of their child support obligation. The child's "educational needs" are a factor that the court considers under section 14-10-115(2)(b). By considering that factor, the court did not order father to pay postsecondary education expenses in contravention of section 14-10-115(13)(a), as father argues.

¶ 29    Finally, we note that the district court did not "mechanically extrapolate" above the guidelines, as mother had requested. *See Van Inwegen*, 757 P.2d at 1121. Rather, it specifically declined to do so and instead relied on the section 14-10-115(2)(b) factors. We conclude that its findings under those factors are sufficient to support the amount of child support it ordered. *Cf. Ludwig*, 122 P.3d at 1060 (remanding for additional findings under the statutory factors to support extrapolation when the court had made no findings concerning the child's specific needs); *Van Inwegen*, 757 P.2d at 1121 ("Inasmuch as the trial court here set child support by mechanically extrapolating the amounts specified in the guideline, it did not consider the statutorily specified relevant factors. Thus,

14

its order represents an abuse of discretion and cannot stand."). *But cf. Upson*, 991 P.2d at 344-45 (applying deviation standard and concluding that general findings concerning child's needs were insufficient). Thus, we discern no abuse of the discretion provided to the court in this situation. *See* § 14-10-115(7)(a)(II)(E); *see also Bohn*, 8 P.3d at 542.

### D. Retroactive Modification

¶ 30 We are not persuaded by father's contention that the court erred by retroactively modifying child support back to the date mother moved to modify.

¶ 31 A child support modification "should be effective as of the date of the filing of the motion, unless the court finds that it would cause undue hardship or substantial injustice." § 14-10-122(1)(d), C.R.S. 2017; *see In re Marriage of Nelson*, 2012 COA 205, ¶ 40.

¶ 32 As mother points out, father did not argue, nor does the record show, that applying the statute would cause undue hardship or substantial injustice. *Cf. Nelson*, ¶ 41 (upholding maintenance modification as of date of motion to modify when, although the court made no finding concerning hardship, the husband's income had increased such that he was able to pay the retroactive

maintenance).  Thus, the court did not abuse its discretion in applying the statute here, and because father did not argue a basis for undue hardship or substantial injustice, it also did not err in not addressing that issue.

### III.  Section 14-10-119 Attorney Fees

¶ 33     Last, father contends that the district court abused its discretion by awarding mother a portion of her attorney fees under section 14-10-119 without making sufficient findings to support the award.  We disagree.

¶ 34     Section 14-10-119 empowers the trial court to apportion costs and fees equitably between parties based on their relative ability to pay.  *In re Marriage of Gutfreund*, 148 P.3d 136, 141 (Colo. 2006).  Courts are allowed great latitude under the statute to craft attorney fees orders appropriate to the circumstances in a given case.  *Id.*; *see Davis*, 252 P.3d at 538 (decision whether to award fees under section 14-10-119 will not be disturbed absent abuse of discretion).

¶ 35     After finding the parties' incomes for child support modification purposes, the district court found, based on the disparity in their resources and income, that it was equitable to

16

award mother seventy percent of her attorney fees exclusive of her expert witness fees.

¶ 36 We conclude that these findings, when considered along with the evidence in the record, are sufficient to support the attorney fees award. *See Bohn,* 8 P.3d at 542 ("[A]fter making findings as to both parties' financial resources for purposes of child support, the trial court found that the father 'is far better able to pay the cost of this proceeding than the [mother].' This is a sufficient basis to support the award."). Again, we presume that the court considered the evidence before it concerning the parties' financial circumstances. Contrary to father's argument, it was not required to award a lesser amount simply because father's own attorney fees were almost twice as much as mother's.

IV. Appellate Attorney Fees

¶ 37 Mother requests her attorney fees incurred on appeal under section 13-17-102, C.R.S. 2017, contending that the appeal is substantially frivolous. We deny the request.

¶ 38 "Standards for determining whether an appeal is frivolous should be directed toward penalizing egregious conduct without deterring a lawyer from vigorously asserting his client's rights."

17

*Mission Denver Co. v. Pierson,* 674 P.2d 363, 365 (Colo. 1984). Fees should be awarded only in clear and unequivocal cases when the appellant presents no rational argument, or the appeal is prosecuted for the purpose of harassment or delay. *See Wood Bros. Homes, Inc. v. Howard,* 862 P.2d 925, 934-35 (Colo. 1993). That is not the situation here. We therefore decline to award mother appellate fees.

## V. Conclusion

¶ 39    The order is affirmed.

CHIEF JUDGE LOEB and JUDGE CASEBOLT concur.