25CA0580 Peo in Interest of WW 09-18-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA0580
Washington County District Court No. 23JV30002
Honorable Carl S. McGuire III, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of W.W., a Child,

and Concerning H.L.,

Appellant.

---

JUDGMENT AFFIRMED IN PART AND REVERSED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division VII
Opinion by JUDGE MOULTRIE
Tow and Lum, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced September 18, 2025

---

Bauer & Furman, P.C., Steven M. Furman, Fort Morgan, Colorado, for Appellee

Debra W. Dodd, Guardian Ad Litem

Lindsey Parlin, Office of Respondent Parents' Counsel, Denver, Colorado, for Appellant

¶ 1     In this dependency and neglect action, H.L. (mother) appeals the judgment allocating parental responsibilities for W.W. (the child) to J.W. (father).  We affirm in part, reverse in part, and remand the case to the juvenile court with directions.

I.     Background

¶ 2     In May 2023, the Washington County Department of Human Services received a report from law enforcement after mother allegedly attempted to run over father with her car while the child was present.  Mother was arrested, and a petition in dependency and neglect was filed.  The child, then two months old, was placed into paternal grandmother's home, where father also resided, and remained there throughout the rest of the case.

¶ 3     The court adjudicated the child dependent and neglected and the Department developed treatment plans for the parents.

¶ 4     Two years after the case opened, a contested allocation of parental responsibilities (APR) hearing was held.  Mother requested that custody of the child be allocated equally between her and father, or alternatively, that her family time be supervised by her family.  The Department and the guardian ad litem (GAL) argued that father should have primary custody and mother should have

1

three hours of supervised family time per week. Father requested full custody of the child and that mother receive no family time until she further engaged in treatment.

¶ 5 After the hearing, the juvenile court awarded primary custody and decision-making authority to father. Mother was granted therapeutically supervised family time once per week.

## II. Standard of Review

¶ 6 The allocation of parental responsibilities is a matter within the juvenile court's discretion. *See In re Parental Resps. Concerning B.R.D.*, 2012 COA 63, ¶ 15. A juvenile court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair, or is based on a misapplication of the law. *People in Interest of M.W.*, 2022 COA 72, ¶ 12. The juvenile court, as the trier of fact, assesses the credibility of witnesses and determines the sufficiency, probative effect, and weight of the evidence. *People in Interest of A.J.L.*, 243 P.3d 244, 249-50 (Colo. 2010). When its findings have record support, its resolution of conflicting evidence is binding on review. *B.R.D.*, ¶ 15. But we review de novo whether the court applied the correct legal standard in allocating parental responsibilities. *People in Interest of N.G.G.*, 2020 COA 6, ¶ 10.

## III.    Relevant Law

¶ 7    The juvenile court is authorized to determine the legal custody of a child who comes within its jurisdiction, *People in Interest of C.M.*, 116 P.3d 1278, 1281 (Colo. App. 2005), and when allocating parental responsibilities, it must do so in accordance with the child's best interests, *People in Interest of L.B.*, 254 P.3d 1203, 1208 (Colo. App. 2011).

¶ 8    Questions about a child's health and safety, including family time decisions, are entrusted to the juvenile court's discretion. *People in Interest of D.G.*, 140 P.3d 299, 302 (Colo. App. 2006). Because the court itself must make those decisions, it can't delegate to a third party decisions about family time. *See People in Interest of B.C.*, 122 P.3d 1067, 1070-71 (Colo. App. 2005) (holding that the juvenile court can't delegate family time decisions to others); *see also In re Marriage of Elmer*, 936 P.2d 617, 621 (Colo. App. 1997) (prohibiting the district court from delegating the decision of when overnight visits can occur to the child's psychiatrist).

3

## IV. Analysis

### A. The Court Didn't Err by Ordering Mother's Family Time to be Therapeutically Supervised or Declining to Incorporate the Child's Siblings in Her Family Time

¶ 9 Mother first contends that, because there were safe and appropriate family members willing to supervise her family time with the child, the juvenile court's decision to order therapeutically supervised family time was contrary to the child's best interests. We disagree.

¶ 10 The record shows that there were legitimate safety concerns about kin supervising mother's family time. The caseworker explained that she believed professionally supervised family time was necessary for the child's safety because mother's family might not be able to tell if mother was under the influence of illicit substances or be able to maintain safety for the child during family time as well as a professional could. Mother had reportedly relapsed as recently as two months before the contested hearing. And maternal aunt, who mother suggested as a potential kin-supervisor, testified that she couldn't "guarantee" that she would be able to tell if mother was under the influence.

¶ 11 A psychologist who evaluated mother and completed a parent-children interactional evaluation of mother and the child testified during the hearing. The psychologist was qualified by the court as an expert in "clinical psychology, child psychology, parent/child interactionals, and psychological evaluations." He testified that mother's inadequately treated mental and behavioral health presented risks to the child's mental, physical, and emotional well-being during family time. He opined that given these risks, kin supervision wasn't "an appropriate safety net." Thus, the record supports the court's order requiring mother's family time to be therapeutically supervised. *See People in Interest of E.D.*, 2025 COA 11, ¶ 46 (affirming court's restriction of mother's family time to a therapeutic setting as "necessary for the [child's] safety and mental, emotional, and physical health").

¶ 12 Mother next contends that the court failed to consider the legislative intent behind preserving sibling groups, and that the APR judgment effectively eliminated the child's contact with her maternal siblings. We reject this argument.

¶ 13 First, we note mother's reliance on H.B. 19-1288 — the "Foster Youth Siblings Bill of Rights" — which is codified at sections

19-7-201 to -204, C.R.S. 2025, is misplaced. *See* § 19-7-202(1) ("The general assembly finds and declares that it is beneficial for *a youth placed in foster care* to be able to continue relationships with the youth's siblings, regardless of age, so that siblings may share their strengths and associations in their everyday and often common experiences.") (emphasis added). This statute is inapplicable in this case because the child wasn't in foster care.

¶ 14 Regardless, the record supports the juvenile court's order for individualized family time between mother and the child. A visitation specialist, who had supervised family time between mother and the child, reported that mother's relationship with the child had recently declined and that most of mother's focus during family time was on the child's infant sibling. Likewise, the psychologist expert witness also supported one-on-one family time because it appeared mother "mostly ignored" the child when the child's infant sibling was present. He further opined that "at this point in time, it doesn't seem like having a sibling present [during family time] is helpful."

¶ 15 In sum, the record shows that the juvenile court properly considered the provisions of the Children's Code in restricting

mother's parenting time. *See N.G.G.*, ¶ 10. And, because the record evidence also supports the court's decisions requiring therapeutic supervision and limiting family time to mother and the child, without the child's maternal siblings, we decline to disturb them. *B.R.D.*, ¶ 15.

### B. The Court Erred by Granting the Therapeutic Family Time Supervisor Unfettered Discretion to Determine the Duration of Mother's Family Time

¶ 16  Mother also contends that the juvenile court improperly delegated its family time authority to a third party by ordering that the duration of her family time be at the therapeutic supervisor's discretion. For reasons described below, we agree.

¶ 17  In section B.5 of the APR judgment (family time provision), the court allowed mother family time once per week and ordered that the "duration" of mother's weekly family time session be "as determined by the therapeutic visitation provider." Mother argues that in so ordering, the court improperly delegated "the decision of when and how [she] could exercise family time to a third-party therapist." The Department and GAL disagree, arguing that the family time provision isn't an improper delegation of the court's authority because the court has already determined the "when" and

"how" of mother's family time to be once a week with a therapeutic supervisor. We agree with mother.

¶ 18    As we discuss in Part IV.A. above, the juvenile court acted well-within its discretion to order that mother's family time be therapeutically supervised. But the court erred by failing to provide a future therapeutic supervisor with guidance regarding *how* to determine the duration of mother's family time. *See B.C.*, 122 P.3d at 1070-71. If, as the Department and GAL suggest, the court intended to allow the therapeutic supervisor to use their professional discretion determine the duration of mother's parenting time based upon the child's safety, the court needed to explicitly say so. As written, the family time provision could allow a therapeutic supervisor to deny, stop or cancel parenting time at any point, for any reason. And because the family time provision doesn't tether the therapeutic supervisor's discretion to determine the duration of mother's family time to the child's safety, it's an improper delegation of the court's authority. *See L.B.*, 254 P.3d at 1208; *see also B.C.*, 122 P.3d at 1070 (noting that decisions concerning family time may not be *unconditionally* delegated to third persons).

¶ 19 Accordingly, we reverse the family time provision of the APR judgment and remand the case for the juvenile court to, at a minimum, direct the therapeutic supervisor to exercise their professional discretion, consistent with ensuring the child's safety, to determine the duration of mother's weekly family time sessions.

## V.  Disposition

¶ 20 The judgment is affirmed in part and reversed in part.  We reverse the portion of the APR judgment that allows, without additional direction, a therapeutic supervisor to determine the duration of mother's weekly family time.  On remand, the juvenile court must modify the family time provision to, at a minimum, direct the therapeutic supervisor to exercise their professional discretion, consistent with ensuring the child's safety, to determine the duration of mother's weekly family time.  The APR judgment is otherwise affirmed.

JUDGE TOW and JUDGE LUM concur.