In re the MARRIAGE OF Susan
ROSENTHAL, f/k/a Susan
L. Bartlo, Appellee,

and

Kent W. Bartlo, Appellant.

No. 93CA1526.

Colorado Court of Appeals,
Div. I.

Feb. 23, 1995.

As Modified on Denial of Rehearing
May 18, 1995.*

Certiorari Denied Oct. 10, 1995.

---

* Roy, J., would grant petition of appellee.

Cohen & Cohen, P.C., Sara–Jane M. Cohen, Boulder, for appellee.

Stevens, Littman & Biddison, Roger E. Stevens, Craig A. Weinberg, Boulder, for appellant.

Opinion by Judge METZGER.

In this post-dissolution of marriage proceeding, Kent W. Bartlo (father) appeals the order modifying his child support obligation. We reverse the order and remand the cause for the entry of further findings.

The marriage of father and Susan Rosenthal (mother) was dissolved in 1990. A separation agreement, incorporated into the decree of dissolution, provided that mother was to receive custody of the parties' two children, father was to receive parenting time rights, and he was to pay $640 a month in child support.

Thereafter, father moved from Boulder to Nederland, Colorado. He filed a motion with the trial court seeking an increase of parenting time with the minor children to include

Sunday overnights (or Monday overnight if Monday were a school holiday).

The parties reached an agreement concerning this issue and signed a stipulation that was approved and entered as an order by the trial court on February 25, 1991. That stipulation and order provided that the children would spend an additional overnight with father at the end of his two weekends per month of parenting time, that he would do all the school year visitation driving, and "that the extra overnights he will have shall not be used as a basis for reducing his child support obligation."

Then, in 1992, mother moved for increased child support asserting that father's income had increased, her own income had decreased, and that these calculations resulted in more than the required 10 percent deviation from the child support schedule set out in § 14-10-115, C.R.S. (1994 Cum.Supp.).

At a hearing before the magistrate, mother contended that the additional overnights that father had received pursuant to the February 1991, order could not be considered in computing his child support obligation. Father contended that, since he was not the movant in the proceeding, his additional overnights should be included in the child support computation. The magistrate determined that, for purposes of mother's motion to increase, the actual overnights should be considered, and ordered father to pay child support, pursuant to a strict interpretation of the guidelines, of $639.97 per month.

Mother appealed the magistrate's order to the district court, renewing her argument that the stipulation precluded consideration of father's additional overnights. After having considered the briefs, exhibits, and applicable law, the court concluded that: "The magistrate erred in disregarding and overriding section 2 of the court's order of February 26, 1991. Therefore, the court's order of May 24, 1993 is hereby modified to conform with the February 1991 stipulation and order, which states that 'extra overnights' cannot be used as a basis for reducing respondent's child support obligation. Consequently, respondent's monthly child support obligation is modified to $790."

Father appeals that order, contending that the district court erred in holding the parties to the terms of the 1991 stipulation. Because we disagree with the court's analysis, we reverse the order and remand the cause for the entry of an order and findings.

Section 14-10-112(1), C.R.S. (1994 Cum. Supp.) provides: "[T]he parties may enter into a written separation agreement containing provisions for ... the custody, support, and parenting time of their children." Section 14-10-112(2), C.R.S. (1994 Cum.Supp.) provides that: "[T]he terms of the separation agreement, except terms providing for the custody, support, and parenting time of children, are binding upon the court unless it finds ... that the separation agreement is unconscionable."

The statute goes on to provide, in § 14-10-112(6), C.R.S. (1994 Cum.Supp.) that: "Except for terms concerning the support, custody, or parenting time of children, the decree may expressly preclude or limit modification of terms set forth in the decree if the separation agreement so provides." Finally, § 14-10-112(5), C.R.S. (1987 Repl.Vol. 6B) provides: "Terms of the agreement set forth in the decree may be enforced by all remedies available for the enforcement of a judgment, including contempt, but are no longer enforceable as contract terms."

■ Here, the original agreement of the parties concerning custody, parenting time, and child support was incorporated in the decree and therefore became an order of the court. The modification of parenting time and the correlative non-modification of child support agreement of February 1991 was also made an order of court and, in our view, constituted an amendment to the original order. Therefore, applying § 14-10-112(5), we conclude that the terms of that February 1991 agreement are no longer enforceable as contract terms because they were made an order of court. Consequently, the parties' arguments concerning contract interpretation are inapposite. Rather, the issue revolves around the appropriateness of the modification of the February 1991 order.

■ Section 14-10-115(3)(a), C.R.S. (1994 Cum.Supp.) provides that the child support

guidelines as set forth in § 14–10–115(10)(b), C.R.S. (1994 Cum.Supp.) should be used as a rebuttable presumption for the establishment or modification of the amount of child support. Courts may deviate from the guidelines when its application would be "inequitable, unjust, or inappropriate," but any such deviation must be accompanied by written findings setting out the reasons for the deviation and setting out the presumed amount under the guidelines without a deviation. Section 14–10–115(3)(a).

Pursuant to C.R.M. 6(e), mother petitioned the district court for review. In its review order, the court quoted directly from C.R.M. 6(e)(4) which provides:

> The reviewing judge shall consider a motion for review on the basis of the motions and briefs filed, together with such review of the record as may be necessary. Findings of fact made by the magistrate may not be altered unless clearly erroneous. The reviewing judge may conduct further proceedings, take additional evidence or order a trial de novo in the district court. The reviewing judge shall adopt, reject or modify the initial order or judgment of the magistrate by written order, which order shall be the order or judgment of the district court.

The court then implicitly adopted the findings of fact of the magistrate, but modified the conclusion of the magistrate that the actual overnights that the children spent with father should be included in the computation.

■ We find no error in the trial court's conclusion that it was not bound by the magistrate's ultimate conclusion regarding the amount of child support to be paid. As we read C.R.M. 6(e)(4), a reviewing court may not alter findings of fact unless they are clearly erroneous, but it may alter ultimate conclusions. Here, the court made no alteration at all in the magistrate's findings of fact concerning the parties' income, expenses, the children's needs, or the terms of the 1991 stipulation and order. Therefore, the order was not erroneous for that reason.

However, we disagree with the district court's implicit assumption that the February 1991 stipulation and order provided a nonmodifiable mandate to any later court confronted with the question of modification of child support or parenting time.

■ In reviewing a magistrate's order according to the standards set out in § 14–10–115(3)(a), a court is free to consider the terms of the previous order as a factor in determining whether rigid adherence to the guidelines is appropriate or whether deviation is warranted. However, even though the previous order is based on a stipulation, the court need not blindly follow that stipulation. As a division of this court held in *In re Marriage of Miller*, 790 P.2d 890, 892 (Colo. App.1990): "[T]he parties may not preclude or limit the court's authority concerning child support."

■ Contrary to mother's contention, we do not view *In re Marriage of Channell*, 797 P.2d 819 (Colo.App.1990) as determining that a prior support order based upon the stipulation of the parties is binding in subsequent proceedings. There, the court addressed the validity of a court order determining the age of majority for purposes of emancipation. The court concluded that the trial court was bound by the provisions of a decree addressing this topic pursuant to former § 14–10–122(3), C.R.S. (1987 Repl.Vol. 6B).

Unlike that former section of the statute, the current child support statute makes no provision for entry of a binding decree relative to child support. See § 14–10–122, C.R.S. (1994 Cum.Supp.).

Because the reasons given by the court for its deviation from the guidelines are not legally sufficient and may well rest on an invalid assumption, we must reverse the order and remand the cause for the entry of a child support order consistent with the views expressed in this opinion.

RULAND, J., concurs.

ROY, J., concurs in part and dissents in part.

Judge ROY concurring in part and dissenting in part.

I respectfully concur in part and dissent in part.

I concur that the matter must be remanded for further findings or proceedings. I differ with the majority with respect to how a stipulation of the parties is to be treated upon remand and on any subsequent motion to modify child support. The majority would have the stipulation treated as a circumstance for the court to consider in determining whether to depart from the child support guideline and increase father's child support. In my view, so treating the stipulation would adversely impact amicable settlements of parenting time and child support matters to the detriment of the children and the parties. Thus, I would enforce the stipulation in accordance with its terms unless its application becomes inequitable, unjust, or inappropriate. While our differences may impact the evidence to be presented, their primary and practical impact relates to the burden of proof.

I have concluded that, under the circumstances of this case, the parties have, by their stipulation which was approved by the court, adopted a modified child support guideline. In my view, such guideline is not contrary to public policy and is, therefore, enforceable subject to the limitations hereinafter set forth.

The marriage between the parties was dissolved in 1990. Shortly after the entry of the final decree, father moved from Boulder to Nederland. As an accommodation to father, the parties stipulated to an increase in father's visitation adding overnights which permitted father to return the children on Monday or Tuesday morning, instead of the respective Sunday or Monday evening, after weekend visitations. The parties' stipulation provided, in pertinent part, as follows:

> [Father] agrees that the extra overnights he will have shall not be used as a basis for reducing his child support obligation.

The trial court found that stipulation to be in the children's best interests, approved it, and made it an order.

Mother commenced these proceedings to increase child support based solely on changes in the parties' incomes. At the hearing, the magistrate refused to hear testimony from the mother with respect to the intent of the parties in entering the stipulation. The magistrate concluded that the application of the stipulation was limited to restricting father from seeking a reduction in child support based solely on the increased parenting time and that the petition to increase child support filed by mother was "a brand new ball game." On that basis, and following the child support guideline, the magistrate ordered father to pay $639.97 per month as child support, a reduction of $.03 per month from the previously ordered support.

The district court, upon review, and without a hearing, concluded that the magistrate erred in not implementing the prior approved stipulation, recalculated father's child support obligation to be $790 per month, and modified the magistrate's order accordingly. In this resulting appeal, father argues that the district court misinterpreted the stipulation and improperly deviated from the child support guideline. I perceive no apparent impropriety in the trial court's ruling.

The Uniform Dissolution of Marriage Act states, as the public policy of Colorado, that: "[I]t is in the best interest of all parties to encourage frequent and continuing contact between each parent and the minor children of the marriage after the parents have separated or dissolved their marriage." Section 14–10–124(1), C.R.S. (1987 Repl.Vol. 6B); *In re Marriage of Lester*, 791 P.2d 1244 (Colo. App.1990). Thus, parenting time is to be determined and amended in accordance with the best interests of the children. Section 14–10–129(2), C.R.S. (1994 Cum.Supp.).

With respect to child support, it is the public policy of Colorado that it be set in an amount reasonable or necessary to support the child. In determining child support, the court is to consider the financial resources of all the parties, including the child, and the standard of living the child would have enjoyed had the marriage not been dissolved. Section 14–10–115(1), C.R.S. (1987 Repl.Vol. 6B). Child support is amendable upon a showing of a substantial and continuing change in circumstance. Section 14–10–122(1)(a), C.R.S. (1994 Cum.Supp.); § 14–10–108(5)(b), C.R.S. (1987 Repl.Vol. 6B).

It is also the public policy of Colorado that matters relating to dissolution of marriage be resolved amicably. Sections 14–10–102, C.R.S. (1987 Repl.Vol. 6B) and 14–10–104.5, C.R.S. (1994 Cum.Supp.). Agreements between the parties are binding on the court except those relating to child custody, support, and parenting time which are subject to approval by the court. Section 14–10–112, C.R.S. (1987 Repl.Vol. 6B); *In re Marriage of Miller*, 790 P.2d 890 (Colo.App.1990).

In 1986, the General Assembly, without modifying the underlying public policy, adopted extensive amendments to the Uniform Dissolution of Marriage Act relating to child support, the principal aspect of these amendments was to establish a guideline, a detailed mathematical formula, for determining a presumptive child support order. Section 14–10–115(3), C.R.S. (1987 Repl.Vol. 6B). The guideline creates a rebuttable presumption as to the amount of monthly child support from which the court, in its discretion, may depart if the resulting order is inequitable, unjust, or inappropriate and the reasons for departure must be stated in writing. Section 14–10–115(3)(a); *In re Marriage of Marshall*, 781 P.2d 177 (Colo.App.1989). The guideline is also applicable to amending an existing child support order. If the child support computed in accordance with the guideline results in a change from the existing order of less than 10%, it must be deemed not to be a substantial and continuing change in circumstance. Section 14–10–122(1)(b), C.R.S. (1987 Repl.Vol. 6B).

The guideline introduced the concept of "shared custody" which at the time of these proceedings was defined as that circumstance in which "each parent keeps the children overnight for more than twenty-five percent of the year [now ninety-two overnights] and that both parents contribute to the expenses of the children in addition to the payment of child support." Section 14–10–115(8), C.R.S. (1987 Repl.Vol. 6B); *In re Marriage of Redford*, 776 P.2d 1149 (Colo.App.1989). Shared custody impacts the computation by reducing the monthly child support obligation, sometimes substantially. Section 14–10–115(14)(b), C.R.S. (1994 Cum.Supp.).

In adopting the shared custody concept, the General Assembly linked two issues, child support and parenting time, which are premised on different public policies and which are to be determined and modified on wholly different grounds. While stability is a hallmark with respect to child custody and parenting time matters, flexibility is desirable in child support matters. It should come as no surprise that parents, and counsel in advising parents, will consider each in light of the other. That is, presumably, what occurred here.

The parties have, by a stipulation approved by the court, unlinked, or partially unlinked, child support and parenting time to the extent of the agreed upon increased parenting time. This unlinking has the effect of increasing father's child support obligation and does not infringe upon the purposes for which the guideline was adopted. *See* § 14–10–115(3)(c), C.R.S. (1987 Repl.Vol. 6B). It is not contrary to the public policy of encouraging frequent and continuing contact between each parent and the minor children of the marriage, of fostering amicable resolution of disputes, and of providing child support in an amount reasonable or necessary to support the child. Indeed, in my view, taken in combination, this stipulation fosters these frequently conflicting policies.

When the amount of parenting time for the noncustodial or nonresidential parent approaches, reaches, or exceeds the threshold of 92 overnight visits per annum, agreeing to additional overnights may well have financial implications for both parties. The party having sole custody, or the primary residential custodian in a joint custody arrangement, and receiving child support may become reluctant to agree to additional overnights because of the effect on the child support obligation. The reluctance of the custodial parent, in my view, is increased by the fact that the increased parenting time will become the status quo and, absent agreement, very difficult legally and practically to reduce. Child support is, on the other hand, relatively easy to modify.

The unlinking, or partial unlinking, of child support and parenting time here fosters consideration of parenting time based solely on

the best interests of the child or children. In addition, such unlinking, in my view, fosters amicable settlements of custody and parenting time issues.

I would, therefore, remand the matter to the trial court for further findings or proceedings consistent with my views. I would require the court to apply the stipulation to this and any future proceeding relating to child support unless the court concludes that its application is, or has become, inequitable, unjust, or inappropriate. *See* § 14–10–115(3)(a). The burden of demonstrating the inequity, injustice, or inappropriateness of the stipulation would rest on the party asserting it, in this instance the father.