**In re the Marriage of Gunnar K. LUDWIG, Appellant,**

**and**

**Judy A. Ludwig, Appellee.**

**No. 04CA0650.**

Colorado Court of Appeals, Division IV.

Sept. 8, 2005.

Cage Williams Abelman & Layden, P.C., Jordan M. Fox, Denver, Colorado, for Appellant.

Klauzer & Tremaine, L.L.C., Shelley A. Hill, Steamboat Springs, Colorado, for Appellee.

Opinion by: Judge LOEB.

Gunnar K. Ludwig (father) appeals from the order modifying the child support he was obligated to pay to Judy A. Ludwig (mother) for his two children and removing him as custodian on his daughter's college account. We affirm in part, reverse in part, and remand with directions.

The parties' marriage was dissolved by decree in March 2000, and the decree incorporated the parties' agreement, which was reached without counsel. As pertinent here, the agreement provided:

> [Father] will pay $1900/month in child support. Child support will decrease by 1/3 to $1270 on 09/01/03, it will further decrease by another 1/2 to $635 on 9/01/06, and will be eliminated on 12/04/08. The above child support payments will increase proportionally with [father's] annual cost-of-living raises. [Father] will maintain the children's health insurance coverage. Both [father] and [mother] agree to assist the children in obtaining a respectable college education.

In September 2003, mother filed a motion to enforce and modify child support, alleging that father had never increased support, that his income substantially increased while hers remained constant, and that changes to the child support guidelines automatically established changed circumstances.

Mother also filed a motion seeking removal of father as the trustee on the daughter's custodial account, established under the former Uniform Gifts to Minors Act (UGMA) (repealed and reenacted as the Uniform Transfers to Minors Act (UTMA), § 11–50–101, et seq., C.R.S.2004). Mother asserted that father refused to release any of the money or otherwise contribute to the daughter's first year of college expenses.

After a hearing, the trial court determined that the parties agreed that child support would be paid until each child reached the age of twenty-one and that such agreement was enforceable.

Based on the combined adjusted gross income of the parties, the court further found that extrapolation beyond the statutory guidelines was appropriate. The court ordered father to pay mother $2,531.76 per month child support, beginning September 1, 2003, with credits for payments already made.

The court also found that father had violated his fiduciary duty to the daughter as custodian of the UGMA account and that, even absent such violation, good cause existed to replace father as custodian on the account.

In a later ruling, the court granted mother's C.R.C.P. 60 motion to correct the calculation of child support based on its previous findings of the parties' income and ordered father to pay child support in the amount of $3,502 per month.

I.

Father contends the court erred in interpreting the parties' separation agreement as a written stipulation to extend child support beyond the age of emancipation. We disagree.

For child support orders entered on or after July 1, 1997, emancipation occurs and child support terminates when the child attains nineteen years of age unless, as relevant here, the parties agree otherwise in a written stipulation after July 1, 1997. Section 14–10–115(1.6)(a), C.R.S.2004.

Section 14–10–115(1.7), C.R.S.2004, provides:

> Nothing in subsection (1.5) or (1.6) of this section shall preclude the parties from agreeing in a written stipulation or agreement on or after July 1, 1997, to continue child support beyond the age of nineteen or to provide for postsecondary education expenses for a child and to set forth the details of the payment of such expenses. If such stipulation or agreement is approved by the court and made part of a decree of dissolution of marriage or legal separation, the terms of such agreement shall be enforced as provided in section 14–10–112 [C.R.S.2004].

Father argues that the court was required to apply the agreement as written and that under the agreement, the parties intended

clear and unambiguous scheduled changes in the amount of child support owed.

■ However, the promise in a separation agreement to pay postsecondary education expenses, once adopted by the court and incorporated in a decree of dissolution, is no longer enforceable as a contract term. *In re Marriage of Chalat,* 112 P.3d 47 (Colo.2005); *In re Marriage of Rosenthal,* 903 P.2d 1174 (Colo.App.1995) (parties' 1991 stipulation, approved by the court, that father's increased overnights would not effect a modification of child support did not preclude court from considering the actual number of overnights in resolving later motion to modify 1991 order); *see also* § 14–10–112(2), (5) C.R.S.2004.

While the parties can agree to postsecondary education support, the terms of their agreement do not bind the court, and the parties cannot preclude or limit subsequent court modification of terms concerning child support. Instead, § 14–10–122, C.R.S.2004, plainly establishes substantial and continuing changed circumstances as the prerequisite to modification of all postsecondary education support orders. *In re Marriage of Chalat, supra.*

■ Here, mother alleged that there had been a substantial and continuing change of circumstances in the incomes of the parties. Thus, notwithstanding the terms of the separation agreement, the trial court had the authority to determine whether there was a substantial and continuing change of circumstances requiring modification of the amount of father's child support and postsecondary education support obligations for the daughter.

*In re Marriage of Pratt,* 651 P.2d 456 (Colo.App.1982), relied upon by father, is not persuasive. That case merely concluded that the trial court had the power to consider the merits of the wife's request to issue a show cause order as to whether the husband was in contempt for failure to comply with the terms of the separation agreement. It did not consider, as here, whether the parties' agreement to provide for automatic increases in child support based on increases in the husband's monthly income could, or should, be modified.

Because mother concedes it was error, we need not address father's argument that the trial court erred in modifying child support for an additional ten days prior to the filing of the motion.

## II.

Father also contends the trial court erred in calculating child support by extrapolating above the child support guidelines without justification. We agree that the findings are insufficient and that the amount of support must be reconsidered on remand.

■ If the parties' combined adjusted gross income exceeds the uppermost level of the child support guidelines, the court may use its discretion in determining child support. However, "the presumptive basic child support obligation shall not be less than it would be based on the highest level of adjusted gross income set forth in the guideline." Section 14–10–115(10)(a)(II)(E), C.R.S.2004.

Extrapolation remains a discretionary matter for the trial court. *In re Marriage of Foss,* 30 P.3d 850, 852 (Colo.App.2001); *In re Marriage of Van Inwegen,* 757 P.2d 1118, 1120 (Colo.App.1988).

Father argues that the trial court was required to enter additional findings that the children had special needs or that support at the uppermost level of the guidelines was insufficient to meet their needs. Father also argues that the court incorrectly calculated support based on two children, even though the daughter no longer lives at home and all her educational expenses are payable from the UGMA account. We agree that the court must reconsider the award and enter more specific findings.

■ In establishing child support when the parties' income exceeds the guidelines, the court should consider, among other items, the costs of food, shelter, education, and recreation at the level enjoyed before the dissolution. The court should also consider whether the children's needs, as established by the guidelines, are being met directly or indirectly, and make specific findings to explain the amount of support ordered. *In re Marriage of Upson,* 991 P.2d 341, 344–45 (Colo.App.1999).

Here, in determining that extrapolation beyond the minimum presumed amount of child support under the guidelines was appropriate, the trial court relied on the significant disparity in the parties' relative incomes. The court also considered the significant and disparate tax impact that mother experienced, contrary to the parties' intent, because she was allocated shares of marital stock that had the greatest capital gain.

These findings were relevant to the court's determination whether to deviate from the presumed minimum amount of support. *See* § 14–10–115(3)(a), C.R.S.2004. However, because there are no additional findings establishing the children's specific needs, we cannot determine whether the court's mechanical extrapolation of the child support guidelines adequately addressed the factors set forth in § 14–10–115(1), C.R.S.2004. As relevant here, those factors include not only the financial resources of the parties and the children, but also the children's educational needs and the standard of living that the children would have had if the marriage had not been dissolved.

Thus, we reverse the child support order and remand for additional findings. The current order of support shall remain in effect pending further order of the court. On remand, the court shall make such adjustments as may be necessary to give the parties credit for amounts that may have been incorrectly paid under the prior order. *See In re Marriage of Upson, supra.*

### III.

Father also asserts the trial court erred by not considering the daughter's income in determining his child support obligation. We disagree.

Section 14–10–115(13)(b), C.R.S.2004, provides that "[a]ny additional factors that actually diminish the basic needs of the child may be considered for deductions from the basic child support obligation." *See In re Marriage of Barrett,* 797 P.2d 848 (Colo.App. 1990); *cf.* § 14–10–115(1.5)(b)(I), C.R.S.2004 (in determining the sum reasonable for the education expenses of a child in orders entered prior to July 1, 1997, the court takes into account the resources of the child).

The extent to which a child's income should be applied to the payment of educational expenses, however, is a question of fact to be determined by the trial court under the totality of circumstances in each case. *In re Marriage of Barrett, supra* (applying both § 14–10–115(13)(b) and former § 14–10–115(13)(a)(III), deleted effective July 1, 1991).

The court is not required, however, to deduct the entire amount of a child's income from the educational costs or the basic child support obligation. Instead, it must determine whether, and to what extent, such income reasonably should be applied to reduce the need for parental support. *In re Marriage of Barrett, supra.* The court may conclude that the child's assets should be preserved for educational expenses after the age of twenty-one or personal expenses while in college. *In re Marriage of Pollock,* 881 P.2d 470, 472 (Colo.App.1994).

A property transfer to an account under the former UGMA is irrevocable, the property is indefeasibly vested in the minor, and the custodian only has the rights, powers, duties, and authority provided in the statute. Section 11–50–112, C.R.S.2004. Furthermore, § 11–50–115(3), C.R.S.2004, provides that a delivery, payment, or expenditure under the UGMA is in addition to, not in substitution for, and does not affect any obligation of a person to support the minor.

Therefore, if the parents have made gifts to the child during the marriage under the former UGMA and are, at the time of dissolution, able to meet their support obligations, the court may order that such gifts not be used to reduce the legal obligation of support. *In re Marriage of Wolfert,* 42 Colo. App. 433, 436, 598 P.2d 524, 526 (1979).

Here, the trial court found that the principal of the UGMA fund, which was established to meet the daughter's college expenses, did not constitute income to her and that there had been only a small gain in the principal.

Because the parties' combined gross income exceeded the upper limits of the child support guidelines, we conclude that the trial court did not abuse its discretion in essentially determining the parties' ability to meet

their obligation for child support and postsecondary education independently of the funds held in the UGMA account. *See In re Marriage of Wolfert, supra; see also In re Marriage of Pollock, supra; In re Marriage of Barrett, supra.*

However, because a remand is necessary in any event, and because the circumstances of the parties or the daughter may have changed during the pendency of this appeal, on remand the court may, in its discretion, reconsider whether the parties are able to meet their obligation for child support independently of the funds held in the UGMA account. *See In re Marriage of Zisch,* 967 P.2d 199 (Colo.App.1998)(trial court may take into account the change, if any, in mother's employment circumstances in determining the amount of child support for the period after remand).

### IV.

 Father also asserts the dissolution court lacked jurisdiction to enter the order removing him as custodian of the UGMA account. We agree.

Sound policy considerations preclude either permissive or compulsory joinder of interspousal tort claims or contract claims with dissolution of marriage proceedings. *In re Marriage of Lewis,* 66 P.3d 204 (Colo.App.2003)(adopting dictum set forth in *Simmons v. Simmons,* 773 P.2d 602 (Colo.App.1988), and rejecting joinder of wife's promissory note claims in the dissolution of marriage action).

Instead, the trial court has authority only to classify and divide marital property of the parties. Sections 14–10–113(1)–(2) C.R.S.2004 (defining marital property as acquired by either spouse subsequent to the marriage); *cf. Giambrocco v. Giambrocco,* 161 Colo. 510, 423 P.2d 328 (1967)(court lacks jurisdiction to order transfer of marital property to the children).

In our view, the policy considerations discussed in *Simmons* and *Lewis* are equally applicable under the circumstances here, particularly where the court has no jurisdiction over the UGMA account as an asset in the dissolution action.

Accordingly, we conclude that the dissolution court lacked jurisdiction to determine whether father should be removed as custodian of the UGMA account. This issue may be considered, instead, by the district court that obtains jurisdiction over the UGMA account in a separate civil proceeding. *See In re Marriage of Huff,* 834 P.2d 244, 254 (Colo.1992).

### V.

Mother's request for attorney fees under § 14–10–119, C.R.S.2004, is remanded to the trial court for determination. *See In re Marriage of Popack,* 998 P.2d 464, 469 (Colo.App.2000).

The order is reversed as to (1) the calculation of child support and postsecondary education support and (2) the removal of father as the custodian of the UGMA account. In all other respects, the order is affirmed, and the case is remanded for further proceedings, reconsideration, and entry of additional specific findings consistent with this opinion. The current order of support shall remain in effect pending further order of the court.

Judge CASEBOLT and Judge RUSSEL concur.