25CA0929 Marriage of Mendozza 03-26-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA0929
Douglas County District Court No. 23DR30437
Honorable Daniel Warhola, Judge

---

In re the Marriage of

Kristin Marie Mendozza,

Appellee,

and

David Wayne Mendozza,

Appellant.

---

JUDGMENT AFFIRMED AND CASE
REMANDED WITH DIRECTIONS

Division A
Opinion by JUDGE GRAHAM*
Román, C.J., and Berger*, J., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced March 26, 2026

---

Cox Baker Page & Bailey, LLC, James S. Bailey, Alexandra Wetzler England, Lone Tree, Colorado, for Appellee

David Wayne Mendozza, Pro Se

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2025.

¶ 1     In this proceeding dissolving the marriage of David Wayne Mendozza (husband) and Kristin Marie Mendozza (wife), husband appeals portions of the permanent orders regarding parenting time, property division, and maintenance.  We affirm and remand the case for the determination of attorney fees.

## I.     Background

¶ 2     The parties married in 2006 and have two teenage children, E.M. and M.M.  During the marriage, wife's parents gifted the children and the parties money and transferred those funds into the parties' USAA 0979 checking account.  Wife later transferred a portion of the children's gifts into tax advantaged 529 plan accounts and the remainder into a USAA TUTMA 0881 (Texas ) savings account.

¶ 3     Around February 2022, the parties used a portion of their gift for a down payment on a home (Pinewood house).  Six months later, the parties hired a construction company — without a signed contract — to begin demolition in preparation for remodeling the Pinewood house.  Thereafter, the construction company submitted a bid for the total cost of remodeling that was much higher than the parties anticipated.  When they sought other bids, a second

1

company discovered asbestos in the house's drywall and demolition debris. Colorado state health officials halted work on the house until the asbestos could be abated. In early April 2023, after abatement, the Pinewood house was in disarray. It had been stripped down to its wall studs, its existing appliances, windows, doors, and cabinetry had been removed and left out in the elements, and some of its pipes had frozen.

¶ 4    One month later, wife petitioned the court for legal separation.

¶ 5    From early April 2023 until the filing of the petition, $613,000 was spent on a down payment, monthly mortgage payments, and renovations for the Pinewood house. The parties also spent an additional $113,000 on renovations.

¶ 6    By August or September of 2023, the parties agreed that renovations should continue in order to sell the house. In the process of the renovation, wife used funds from the USAA TUTMA 0881 savings account. As part of the stipulation, the parties agreed that before any division of proceeds from the Pinewood house's sale, the proceeds would be used to reimburse the USAA TUTMA 0881 savings account.

¶ 7      From August or September of 2023 until March 2024, the parties spent an additional $192,000 to prepare the house for sale. By the time the house sold for $1,175,000, the parties had spent $932,000 on renovations, a down payment, and mortgage payments.

¶ 8      Days before the permanent orders hearing, wife requested that the court convert her petition for legal separation into a petition for dissolution. The court granted wife's request and issued a decree of dissolution of marriage. As relevant here, at the permanent orders hearing, the court

- granted mother certain parenting time;
- declined to deem the funds from the children's 529 accounts and the USAA TUTMA 0881 savings account marital property;
- found that wife had not dissipated marital property by continuing to renovate the Pinewood house after filing the petition for legal separation; and
- ordered husband to pay wife $495 in monthly maintenance for nine years and four months, as well as $4,750 in retroactive maintenance.

## II.    C.A.R. Compliance

¶ 9    Wife contends that husband violated C.A.R. 28 and C.A.R. 32, "significantly impact[ing her] ability to respond."  Specifically, she argues that husband (1) "omit[ted] the line number relied upon in references to the transcript, as well as the page numbers of exhibits referenced"; (2) cited eleven exhibits that, wife alleges, had not been admitted; and provided no record support for many assertions. Wife requests that we sanction husband.  Despite these alleged deficiencies in husband's briefing, we decline to sanction him.

¶ 10    Husband complied with the relevant requirements for transcript and exhibit citations.  C.A.R. 28(e) requires that an appellate brief's record citations "generally follow the format detailed in the 'Court of Appeals Policy on Citation to Record'" (citation policy).  C.A.R. 28(e).  The citation policy does not require line numbers for citations to transcripts when the transcripts are more than one page in length.  The citation policy also required father to provide page numbers for the exhibits he referenced, which he did.  Although he was not consistent with where he placed the page number — before or after the exhibit number/letter —

husband generally cited the page numbers of the exhibits he referenced.

¶ 11     Wife lists eleven exhibits, not admitted into evidence, that she alleges husband inappropriately referenced.  While courts may not rely on evidence that was not admitted, the appellate rules do not address whether or not an appellant errs by relying on such evidence in their briefing.  *See Hartman v. Freedman*, 591 P.2d 1318, 1321 (Colo. 1979) ("Where [an] issue is tried to the court, it will not be presumed that weight was accorded to evidence which was not admitted.").  Assuming without deciding that reliance on unadmitted evidence violates C.A.R. 28 or 32, there is no need for a sanction.  Wife claims that husband referred to Exhibit 15 in his opening brief, but we could find no such reference.  And she is correct that husband referred to Exhibit 27, but he did so only to point out that it was not submitted into evidence.  Husband relied on Exhibits 1A, A, B, E, F, G, LL, 19, and 22 either within his statement of facts or to support factual statements in his arguments.  We do not rely on these exhibits in our recounting of the facts or in our analysis.

¶ 12　Finally, wife contends — without further explanation or specific legal authority — that "many" of husband's assertions have no support in the record and the judgment "must be affirmed." We decline to address this underdeveloped argument. *See Antolovich v. Brown Grp. Retail, Inc.*, 183 P.3d 582, 604 (Colo. App. 2007).

¶ 13　Ultimately, recognizing that husband appears pro se in this court (although with an extensive legal background), and given the fact that his allegedly imperfect briefing nevertheless has facilitated our review, we elect to address his contentions. *See Cikraji,* ¶ 10; *see also Bruce*, 252 P.3d at 32 (division elected to consider merits of noncompliant brief).

### III.　Parenting Time

¶ 14　Husband argues that the district court erred when it granted wife parenting time before the children's school dances. We perceive no error.

#### A.　Legal Framework and Standard of Review

¶ 15　When allocating parenting time, the court must focus on the children's best interests, giving paramount consideration to the children's safety, needs, and physical, mental, and emotional conditions. *See* § 14-10-124(1.5), C.R.S. 2025; *In re Marriage of*

*Collins*, 2023 COA 116M, ¶ 7.  When making this determination, the court must consider all relevant factors, including the best interest factors identified in section 14-10-124(1.5)(a).  *See In re Marriage of Morgan*, 2018 COA 116M, ¶ 21.  To determine the child's best interest, the court should consider the best interest factors provided in section 14-10-124(1.5).

¶ 16    Section 14-10-124(3) provides that "the court shall not presume that any person is better able to serve the best interests of the child because of the person's sex."  Therefore, it would be inappropriate for the court to grant parenting time to the children solely because she is the mother.  *See In re Marriage of Miller*, 670 P.2d 819, 820 (Colo. App. 1983) (holding that under section 14-10-124(3) it is reversible error to presume that a mother is better able to serve the child's best interests because of her sex).

¶ 17    The court has broad discretion to allocate parental responsibilities and determine parenting time, and we exercise every presumption in favor of upholding its decision.  *See In re Marriage of Hatton*, 160 P.3d 326, 330 (Colo. App. 2007).  We will not disturb a court's parental responsibility and parenting time

decisions absent a showing that the court abused its discretion. *See Morgan,* ¶ 26; *Hatton,* 160 P.3d at 330.

B.     Analysis

¶ 18     Finding that "time with [wife] to do . . . makeup, hair accessories" was in the children's' best interests, the court granted wife's request to have parenting time before school dances. While the court does not provide a specific rationale for its determination, the record shows that wife helping the children before dances was the children's preference and the family's tradition. *See Hatton,* 160 P.3d at 329 (appellate court may presume that the district court took all the competent evidence into consideration in rendering its decision). Therefore, we disagree with husband's argument that the court placed undue emphasis on wife's ability to support the children's preparations on the basis of wife's sex.

¶ 19     Wife testified that the children wanted this time with her. *See* § 14-10-124(1.5)(a)(II). She also testified that she "always help[ed] the children] to do their hair, pin up their dresses, [and] get the right undergarments." *See* § 14-10-124(1.5)(a)(III) ("the interaction . . . of the child with [their] parents"), and (VII) ("the past pattern of involvement of the parties with the child[ren]"). Because

8

the court considered this evidence, which aligns with the required statutory considerations for determining parenting time, we perceive no abuse of discretion.

## IV. Property Division

### A. Governing Law and Standard of Review

¶ 20 When dividing a marital estate, a district court must first determine whether an asset is marital — that is, acquired during the marriage and subject to division — or separate property, which is shielded from distribution. § 14-10-113(1), C.R.S. 2025; *In re Marriage of Dale*, 87 P.3d 219 (Colo. App. 2003). Debts incurred during the marriage, like assets acquired during the marriage, are presumed to be marital. *See* § 14-10-113(3); *see also In re Marriage of Speirs*, 956 P.2d 622 (Colo. App. 1997) (marital liabilities include all debts that a spouse incurs during the marriage).

¶ 21 Afterwards, the district court must enter findings on the approximate value of the spouses' assets, *In re Marriage of Wright*, 2020 COA 11, ¶ 4, including marital debts, *In re Marriage of Jorgenson*, 143 P.3d 1169, 1172 (Colo. App. 2006). We will uphold the court's valuation when it has record support. *In re Marriage of Schmedeman*, 190 P.3d 788, 790 (Colo. App. 2008).

¶ 22    Finally, after setting aside separate property, the district court must divide the marital assets and debts in proportions it deems just, ensuring an equitable, but not necessarily equal, division.  *See* § 14-10-113(1).

¶ 23    The district court has great latitude in making an equitable property division based on the facts and circumstances of each case, and we will not disturb its decision absent an abuse of discretion.  *Collins*, ¶ 19.  The court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair, or when it misapplies the law.  *In re Marriage of Medeiros*, 2023 COA 42M, ¶ 28.

¶ 24    We accept the district court's factual findings unless clearly erroneous, meaning they are not supported by the record.  *See In re Marriage of Gibbs*, 2019 COA 104, ¶ 9.  We review de novo, however, whether the district court applied the correct legal standard.  *Medeiros*, ¶ 28.

## B.    Additional Background

¶ 25    During the marriage, wife's parents gifted the children $250,000 each for their "future support" and wired the funds into husband's and wife's USAA 0979 checking account.  Wife later

10

transferred approximately $30,000 of that gift into two 529 accounts for the children, and the remainder into the USAA TUTMA 0881 savings account.

### C.    529 Accounts

¶ 26    Husband argues that the district court erred by failing to consider the children's 529 accounts as marital property and dividing them.  We disagree.

¶ 27    While husband correctly points out that "the district court lacks authority to order postsecondary education support absent an agreement of the parties," here, the record shows that the parties made such an agreement.  *See In re Marriage of Chalat*, 112 P.3d 47, 51 (Colo. 2005).  The parties' joint trial management certificate identified the children's 529 accounts as "set aside for children's post-secondary education expenses."  Consequently, we perceive no error in the district court's determination that the children's 529 accounts were "child assets" not subject to division.

### D.    TUTMA USAA 0881 Savings Account

¶ 28    Husband argues that the district court erred by not considering the funds in the TUTMA USAA 0881 savings account to be marital and dividing them equally between the parties.  He

11

argues that the account does not comply with the requirements of the Uniform Transfer to Minors Act (UTMA) and is therefore marital. We are not convinced.

### 1. Relevant Law

¶ 29 Under Colorado's UTMA, money, securities, and other property can be invested in the minor's name, with a custodian having a fiduciary responsibility to prudently manage the accounts. §§ 11-50-110 to -113, C.R.S. 2025. But a person establishing the account must follow the statutory guidelines under the UTMA.

¶ 30 Specifically, a person may make a gift or transfer of money to a minor that will be governed by the UTMA, so long as the transferor, the minor, or the custodian is a resident of Colorado on the date of the gift or transfer. § 11-50-103(1), C.R.S. 2025. And a gift or transfer to a minor made pursuant to the UTMA is irrevocable and conveys to the minor indefeasibly vested legal title to the property. § 11-50-112(2), C.R.S. 2025.

¶ 31 To constitute an irrevocable gift or transfer or money under the statute, the transferor must pay or deliver the money to "a broker or financial institution for credit to an account in the name of the transferor, . . . followed in substance by the words: 'as a

custodian for _____ (name of minor) under the 'Colorado Uniform Transfers to Minors Act.'" § 11-50-110(1)(b). Another division of this court has determined when an account is established under the UTMA the district court may not treat it as marital property and divide the funds between husband and wife. *In re Marriage of Nevedrova,* 2024 COA 112, ¶ 14.

### 2. Analysis

¶ 32    As an initial matter, husband first argues that the initial transfer of the children's gifts into the parents' USAA 0979 checking account did not create a UTMA account. The court did not investigate this initial transfer beyond noting the wife's father's intent that the money be used for the children. And the details of this initial transfer were not necessary to its determination that the TUTMA USAA 0881 savings account was not marital. Therefore, even if this initial transfer had been flawed, we perceive no abuse of discretion. *See People v. Frost,* 5 P.3d 317, 323-24 (Colo. App. 1999) (finding no abuse of discretion where improperly disclosed evidence was "not relevant to any issue before the court").

¶ 33    The court concluded, with record support, that the TUTMA USAA 0881 savings account met the requirements of the UTMA and

was, thus, not marital property. In reaching this conclusion, it acknowledged that "as a custodian for _____ (name of minor) under the "Colorado Uniform Transfers to Minors Act" was nowhere explicitly stated. Nevertheless, it noted that the document showing the transfer from the parents' USAA 0979 checking account to the TUTMA USAA 0881 savings account indicates that the account is in M.M.'s name, designated a "custodian" and contained a further designation, "TUTMA."

¶ 34    Husband relies on *Nevedrova* to argue that the court should not have relied on the "TUTMA" notation alone in determining that the account met the UTMA requirements. In *Nevedrova*, the court concluded that no UTMA account had been formed where there was "no evidence in the record" that the transferor delivered the money to the bank, followed by a declaration that they were the custodian for the child as required by section 11-50-110(1)(b) even though the account was identified as "UGMA_UTMA." *Id.* at ¶ 15.

¶ 35    Here, in contrast, the evidence showed not only that wife transferred the gifted money into an account designated "TUTMA," but also that the account was in M.M.'s name, and that wife was the account's custodian. In our view, this satisfies the

14

requirements for a UTMA account as the court in *Nevedrova* described them. And this is true regardless of the fact that wife could not recall whether she received any documentation regarding the "legal ramifications" of creating such an account.

¶ 36     Based on the record, we conclude that there is sufficient evidence to support the statutory purpose of the UTMA: to protect minors by ensuring that their property remains separate and identifiable. *See* § 11-50-113 (custodial property must be "kept . . . separate and distinct from all other property in a manner sufficient to identify it clearly as custodial property of the minor"); *see also In re Marriage of Ludwig*, 122 P.3d 1056, 1061 (Colo. App. 2005) (holding that minor's property in a UTMA account cannot be used to reduce a parent's legal obligation of support); *In re Marriage of Wolfert*, 598 P.2d 524, 526 (Colo. App. 1979) (same, but under Uniform Gifts to Minors Act, which preceded the UTMA). The record indicates that both parents — particularly husband — sought to preserve the TUTMA USAA 0881 savings account as non-marital and "for the kids." At the permanent orders hearing, husband testified that he wanted "to make sure that we gave [the gifted money] to the kids." And he repeatedly testified that he

15

entered into the stipulation regarding the renovation of the Pinewood house in order to "protect[] the kids' money . . . in the 0881 account."  Indeed, as we have already pointed out, one part of the stipulated agreement was to promptly and completely reimburse the TUTMA USAA 0881 savings account after the sale of the home.

¶ 37    Finally, we disagree with husband's contention that the court's order improperly changed the minor beneficiary of the account to make both children beneficiaries.  True, as husband points out, section 11-50-111, C.R.S. 2025 states that, under the UTMA, "a transfer may be made only for one minor."  § 11-50-111.  And we acknowledge that the court's ruling is muddled — mentioning the parties' intent to have both children benefit from the account.  Nevertheless, the court specifically found that the account was in M.M.'s name alone.  This finding meets the requirements of section 11-50-111.

¶ 38    Given this record, in which the court applied the appropriate law with record support, and cognizant of the wide latitude the court has to make property division, we conclude that it did not abuse its discretion in removing the TUTMA USAA 0881 savings account's funds from its calculation of the marital property.

## V.     No Dissipation

¶ 39     Husband argues that the district court erred when it determined that wife had not dissipated marital funds by continuing the Pinewood house renovation after filing the petition for legal separation.  We perceive no basis for reversal.

### A.     Legal Framework and Standard of Review

¶ 40     Upon wife's petitioning for legal separation, an automatic temporary injunction entered.  *See* § 14-10-107(4)(b)(I), C.R.S. 2025.  The injunction prohibited either party "from transferring, encumbering, concealing, or in any way disposing of, without the consent of the other party or an order of the court, any marital property, except in the usual course of business or for the necessities of life . . . ."  § 14-10-107(4)(b)(1)(A).  Such a temporary injunction remains in effect until the final decree is entered, the petition is dismissed, "or until further order of the court." § 14-10-107(4)(b)(I).

¶ 41     In extreme cases, if a party unilaterally withdraws martial funds during the proceedings, in violation of the temporary injunction, the district court may rectify that violation by including the dissipated funds in the property division.  *See, e.g., Jorgenson,*

17

143 P.3d at 1173-74 (a court may consider dissipation of marital assets in contemplation of divorce when dividing marital assets); *In re Marriage of Riley-Cunningham*, 7 P.3d 992, 995 (Colo. App. 1999) (dissipation occurs when a party depletes a marital asset for improper or illegitimate purposes in contemplation of the dissolution). The district court may not consider an asset to have been dissipated unless it finds that the party disposed of the asset improperly. *See In re Marriage of Finer*, 920 P.2d 325, 331 (Colo. App. 1996).

¶ 42    The determination of whether or not a party dissipated marital assets is a purely factual determination. *See In re Marriage of Martinez,* 77 P.3d 827, 831 (Colo. App. 2003). Thus, we defer to the district court's finding on that issue if the record supports it. *Gibbs*, ¶ 9.

## B.    Analysis

¶ 43    True, renovation of the Pinewood house continued after wife filed the petition for legal separation. The district court concluded that the continuing renovation was not a violation of Colorado's statutory temporary injunction pursuant to section 14-10-107(4)(b)(1)(A) and, therefore, was not a dissipation of the

18

marital estate. In doing so, the court found that, because the parties had "already spent hundreds of thousands of dollars" on the Pinewood house and its renovation by the time wife filed the petition, "the construction of the home was in the usual course of business for the family" and therefore did not violate the statutory injunction. The court also found, with record support, that wife had "apprised [husband] of the construction progress that included the work to be done, by whom, and the cost of that work" throughout the project. And it found that evidence indicated husband was "thankful that [w]ife . . . includ[ed] him in the Pinewood project" and that he wanted to "be part of the renovation process." Finally, the court found that continuing the renovation was necessary to preserve the value of the Pinewood house as a marital asset.

¶ 44 These findings are supported by the record. Although husband urges us to conclude that the parties had only spent money on the architectural drawings and asbestos remediation when the petition was filed, the record shows that they had already spent $613,000 by the time wife filed the petition for legal separation.

¶ 45     The record shows that husband received emails regarding the house's ongoing renovation in April and May 2023, before the petition was filed. And husband acknowledged that he had chosen not to open additional emails from wife, sent after the petition was filed — which included emails titled "Pinewood Quotes/Project Cost June 2023" and "Pinewood Project Files." These emails contained information about money spent on renovations beginning in May 2023 when wife filed the petition. Nevertheless, two months after the petition was filed, husband texted wife that he "very much appreciate[d her] bringing [him] into a renovation-related decision" and lamented not being included sooner. He assured wife that he agreed with renovation of the Pinewood house.

¶ 46     To the extent that husband suggests that the court failed to consider wife's alleged economic misconduct when determining that no dissipation had occurred, we disagree. Economic fault is "strictly confined" to "extreme cases." *See In re Marriage of Smith*, 2024 COA 95, ¶ 80. Even in cases in which, after the filing of the petition, one spouse violates the temporary injunction and "financially impact[s] the marital estate," divisions of this court have relied on the district court's determination that no dissipation

occurred when the party was motivated by preserving marital assets. *See id.* (no economic fault where spouse violated injunction in order to limit liability for another marital asset). In this case, the court found that wife, by continuing the renovation process after filing the petition, had not committed economic misconduct by dissipating marital assets. Rather, the court concluded, the renovations preserved the value of the Pinewood house as a marital asset.

¶ 47 This, too, was supported by the record. Husband texted wife two months after she filed the petition that, in proceeding with the renovation, "he want[ed] to help and do what's best for [the parties'] finances" and was "committed to . . . proceeding in ways that best protect our shared assets." Husband's assent to the renovation as a way to preserve the house as a marital asset distinguishes this case from the case he relies on in his briefing: *In re Matter of Storey*, 2022 CO 48, ¶ 41. In *Storey,* the Colorado Supreme Court held that the sale of family furniture — without the knowledge or consent of one party — dissipated marital assets. *Id.*

¶ 48 The record supports the court's conclusion that wife did not violate the temporary injunction, *see* § 14-10-107(4)(b)(I)(A), as well

as its conclusion that funds and expenses were not used for improper purposes or incurred to deplete the marital estate in contemplation of the dissolution proceedings. *See Riley-Cunningham*, 7 P.3d at 995. Therefore, the court did not err.

## VI. Maintenance

¶ 49 Husband argues that the district court erred when, in determining maintenance, it allegedly did not account for wife's potential income (to include gift income and inheritance), her increased earnings, future inheritance, "the inequities in the parties' future incomes," and wife's use of husband's earnings during the separation. We perceive no basis for reversal.

### A. Legal Framework and Standard of Review

¶ 50 Section 14-10-114(3), C.R.S. 2025, specifies the process a district court must follow when considering a maintenance request. *Wright*, ¶ 13. The court must first make findings concerning (1) the amount of each party's gross income; (2) the marital property apportioned to each party; (3) the financial resources of each party; (4) the reasonable financial need as established during the marriage; and (5) whether the maintenance awarded would be

deductible for federal income tax purposes by the payor and taxable income to the recipient. § 14-10-114(3)(a)(I); *see Wright*, ¶ 14.

¶ 51 After making these initial findings, the district court must determine the amount and term of maintenance, if any, that is fair and equitable to the parties. § 14-10-114(3)(a)(II). The court considers the guideline amount and term set forth in section 14-10-114(3)(b). § 14-10-114(3)(a)(II); *Wright*, ¶ 15. These guidelines are a "starting point for the determination of fair and equitable maintenance awards." § 14-10-114(1)(b)(II). And the court must weigh the statutory factors set forth in section 14-10-114(3)(c), including "[t]he lifestyle during the marriage," temporary maintenance amount and duration, "[t]he financial resources of the recipient spouse," the duration of the marriage, and the health of the parties. § 14-10-114(3)(c). But "the factors set forth in section 14-10-114(3)(c) are not exclusive, as the final factor is '[a]ny other factor that the court deems relevant.'" *Wright*, ¶ 15 (quoting section 14-10-114(3)(c)(XIII)). "Thus, '[t]he court has discretion to determine the award of maintenance that is fair and equitable to both parties based upon the totality of the circumstances.'" *Id.* (quoting section 14-10-114(3)(e)).

¶ 52    Last, before awarding maintenance, the district court must find that the party seeking maintenance lacks sufficient property, including marital property apportioned to him or her, to provide for his or her reasonable needs and is unable to support himself or herself through appropriate employment.  § 14-10-114(3)(d).

¶ 53    We review a court's maintenance award for an abuse of discretion.  *Medeiros*, ¶ 58.  A court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair, or when it misapplies the law.  *Id.* at ¶ 28.

## B.    Court's Findings

¶ 54    In ordering husband to pay maintenance, the court, referencing section 14-10-114(3)(a)(I), made the following findings.

- The parties had stipulated to their gross monthly incomes of $7,800 (wife) and $13,300 (husband).

- Considering wife's financial resources and need, the court found that she had been a stay-at-home parent and was "the sole primary provider for the children during the marriage." We note that wife did work part time, but this does not contradict the fact that she was a stay-at-home parent and the primary caretaker for the children.  The

gift wife's parents gave was a gift to the marriage, not just to her. And wife's monthly income does not cover her expenses.

- With regard to husband's financial resources and need, the court considered husband's salary and work history. Husband "advanced his career and his education and was working as an attorney" during the marriage. And husband's monthly income does not cover his expenses.

- Maintenance "would not be deductible for federal income tax purposes by the payor, nor would be taxable income to the recipient."

¶ 55 The court then reviewed the requirements for section 14-10-114(3)(a)(II) and found that there is no maintenance guideline amount in this case because the parties' incomes are too high, but that "the term of maintenance set forth pursuant to statute would be nine years and four months."

¶ 56 Finally, as required by section 14-10-114(3)(d), and despite husband's argument that the court made no such determination, the court determined that wife lacked sufficient property, including marital property apportioned to her, to provide for her reasonable

needs and was unable to support herself through appropriate employment. § 14-10-114(3)(d). In making this finding, the court explicitly referenced wife's parents' large financial gifts as "an early inheritance" and that wife has "just started working again full-time."

## C.   Analysis

¶ 57   Husband argues that the district court was required to make findings about wife's "actual or potential income" including her gift income and inheritance. § 14-10-114(3)(a)(I)(C). Specifically, husband says that the court "failed to account" for wife's parents' gifts which, according to husband, would increase wife's "historical income" to "an average of $168,750 per year between 2021 and 2024." But the record shows that the court *did* consider these gifts when determining wife's reasonable need for maintenance. Similarly, husband suggests wife has a future inheritance, but his record citation does not clearly support that contention.

¶ 58   The court made the required findings pursuant to the applicable statutory framework and with record support. Therefore, it did not abuse its discretion.

## VII. Requests for Attorney Fees

¶ 59    Husband requests an award of attorney fees pursuant to C.A.R. 38(b). He argues that wife's answer brief contains arguments that are "vague, misleading, incoherent, and based on shifting legal standards and inaccurate analyses." Even if C.A.R. 38(b) were applicable to wife's answer to husband's appeal, we disagree that her briefing was so flawed as to justify the award of husband's attorney fees. C.A.R. 38(b) ("If the appellate court determines that an appeal . . . is frivolous, it may award damages it deems appropriate, including attorney fees . . . .").

¶ 60    Wife requests an award of attorney fees pursuant to C.A.R. 39.1; she argues that husband's claims were "frivolous and unsubstantiated." Frivolous appeals include those that lack any rational justification or are prosecuted for the sole purpose of harassment or delay. *See In re Marriage of Boettcher*, 2018 COA 34, ¶ 38. We cannot conclude that husband's arguments justify an award of fees under this section. Husband's arguments did not lack rational justification and we could find no evidence — nor did wife point us to any — to indicate that husband's appeal was filed to solely delay finality or harass her.

27

¶ 61    Wife also requests attorney fees under section 14-10-119, C.R.S. 2025.  But the district court has already found that there is no equitable basis for such an award and we agree.

## VIII.  Disposition

¶ 62    The judgment is affirmed and the case is remanded for a determination of attorney fees pursuant to section 14-10-119.

CHIEF JUDGE ROMÁN and JUDGE BERGER concur.